**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

CRYSAL CROSLEY, individually and as
Parent
and Natural Guardian of Z.C.,

Case No. 1:26-cv-05378

Plaintiff,

-against-

KAMAR H. SAMUELS, in his official
capacity as
Chancellor of the New York City Department
of
Education, and the NEW YORK CITY
DEPARTMENT OF EDUCATION,

Defendants.

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR**
**TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION OR**
**OTHER ORDER UNDER THE IDEA'S STAY-PUT PROVISION**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ....................................................................................................1

STATEMENT OF FACTS .............................................................................................................4

    A. The Student and Her Established Pendency Placement.................................................4

    B. The Pendency-Setting Source .....................................................................................5

    C. The 2026–2027 DPC and Pendency Request...............................................................5

    D. The July 1 Order Requirement and Thirty-Five-Day Funding Period...........................6

    E. DOE's Announced Order-Dependent Policy ................................................................7

LEGAL STANDARD......................................................................................................................7

ARGUMENT ...................................................................................................................................9

    I. THE COURT HAS JURISDICTION, AND NO EXHAUSTION IS REQUIRED..........9

    II. iBRAIN IS Z.C.'S ESTABLISHED PENDENCY PLACEMENT..............................10

    III. MENDEZ ENTITLES Z.C. TO RELIEF. ..................................................................11

        A. Track One....................................................................................................11

        B. Track Two ...................................................................................................11

        C. Track Three .................................................................................................13

    IV. DOE MAY NOT CONDITION PENDENCY ON A NEW IHO ORDER, MAY NOT GRANT ITSELF A STAY BY INACTION, AND FACES NO LEGAL RISK IN BEING ORDERED TO FUND. ......................................................................................................13

    V. COST IS NOT A BASIS TO CONTEST PENDENCY...............................................14

    VI. THE RELIEF REQUESTED....................................................................................15

CONCLUSION..............................................................................................................................17

# TABLE OF AUTHORITIES

## Cases

Bd. of Educ. of Pawling Cent. Sch. Dist. v. Schutz, 290 F.3d 476 (2d Cir. 2002).........8, 10, 14

Honig v. Doe, 484 U.S. 305 (1988) ...................................................................................8

Mackey ex rel. Thomas M. v. Board of Educ. for Arlington Cent. Sch. Dist., 386 F.3d 158 (2d Cir. 2004) ..........................................................................................8, 11, 14, 15

Mendez v. Banks, 65 F.4th 56 (2d Cir. 2023)...........................................................3, 9, 11–13

Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ., 297 F.3d 195 (2d Cir. 2002)................8–9

Zvi D. by Shirley D. v. Ambach, 694 F.2d 904 (2d Cir. 1982) .....................................8, 11, 15

## Statutes

20 U.S.C. § 1415(i)(2) ......................................................................................................9

20 U.S.C. § 1415(i)(2)(C)(iii) .........................................................................................9

20 U.S.C. § 1415(j) ....................................................................................................1, 8–11

28 U.S.C. § 1331................................................................................................................9

28 U.S.C. §§ 2201–2202...................................................................................................9

N.Y. Educ. Law § 4404(4)...........................................................................................8, 10

## Regulations and Rules

34 C.F.R. § 300.518(a)................................................................................................8, 10

34 C.F.R. § 300.518(d) .....................................................................................................8

8 N.Y.C.R.R. § 200.5(m) ...........................................................................................8, 10

8 N.Y.C.R.R. § 200.5(m)(2) .............................................................................................8

Fed. R. Civ. P. 57.............................................................................................................9

Fed. R. Civ. P. 65.............................................................................................................9

## PRELIMINARY STATEMENT

This is a stay-put enforcement motion. It asks this Court to enforce the automatic command Congress wrote into the Individuals with Disabilities Education Act ("IDEA"): that a child with disabilities "shall remain in the then-current educational placement" while a dispute over the child's program is litigated. 20 U.S.C. § 1415(j).

Plaintiff Crysal Crosley is the parent and natural guardian of Z.C., a student with disabilities whose established pendency placement is The International Academy for the Brain ("iBRAIN"). Z.C. is a fourteen-year-old student classified by DOE as a student with a Traumatic Brain Injury. She presents with complex neurological, communication, motor, mobility, adaptive, feeding/swallowing, assistive-technology, transportation, school-health, and intensive management needs. She uses a power wheelchair, relies on AAC and total-communication supports, requires a highly structured program, and requires coordinated instruction, related services, school-health supports, specialized transportation, and access supports to access school safely and receive educational benefit.

Z.C.'s iBRAIN-based pendency placement is established as a matter of law. The legal basis for pendency is the unappealed Findings of Fact and Decision in IHO Case No. 277285, dated June 27, 2025, which itself relied on the prior unappealed FOFD in IHO Case No. 250764. In that decision, the IHO held that Z.C.'s pendency lay in the prior unappealed FOFD in IHO Case No. 250764, which awarded payment for Z.C.'s nonpublic school, related services, and transportation costs. The IHO found that, because the prior FOFD was the last unappealed FOFD, Z.C. was entitled to pendency and awarded tuition, services, and transportation from the filing of the DPC through the issuance of the FOFD. Spinner Decl. Ex. 2. The 2026–2027 DPC package identifies the same legal basis and seeks implementation of Z.C.'s iBRAIN-based pendency placement.

For the 2026–2027 twelve-month school year, Parent submitted a Due Process Complaint ("DPC") challenging DOE's program and invoking Z.C.'s stay-put rights. The DPC was assigned OATH-SEHD Case No. 311523. Parent's DPC and pendency materials requested immediate implementation of pendency, including Z.C.'s iBRAIN tuition/programming, related services, school-health supports reflected in the pendency materials, special transportation, and the transportation services necessary for Z.C. to access iBRAIN safely and consistently. The DPC package is attached to the Spinner Declaration as Exhibit 1. The legal basis for pendency is attached as Exhibit 2. DOE's own Davis Letter regarding its order-dependent iBRAIN pendency policy is attached as Exhibit 3.

DOE has not issued the authorizations, approvals, funding commitments, payment directions, or implementation steps necessary to maintain Z.C.'s pendency placement for the 2026–2027 twelve-month school year. That failure creates the emergency.

Under the iBRAIN Enrollment Agreement included in the DPC package, Installment 1 is due by July 1, 2026. To preserve Z.C.'s ability to attend iBRAIN and receive educational programming and related services for the 2026–2027 school year, Parent must either pay Installment 1 by July 1, 2026, or obtain a state or federal order by July 1, 2026 directing DOE to fund Z.C.'s pendency placement at iBRAIN consistent with the Enrollment Agreement, with DOE's funding/payment for the July 1 installment obligations to be completed no later than thirty-five days after July 1, 2026.

The requested relief respects that structure. Parent seeks a Court order issued before July 1, 2026 declaring and enforcing Z.C.'s pendency placement and directing DOE to maintain, implement, and fund that placement in accordance with the pendency source and applicable agreements. Parent further seeks direction that DOE complete the authorizations, approvals,

2

funding commitments, payment directions, and funding/payment necessary for the July 1 installment obligations no later than thirty-five days after July 1, 2026, and fund ongoing pendency obligations as they become due under the pendency source and applicable agreements.

DOE has already announced why Court intervention is necessary. In Davis v. Aviles-Ramos, No. 25-cv-07555-KPF, DOE told Judge Failla that "[i]n every iBrain case, DOE contests pendency transportation at Sisters Travel and Transportation," that "in every iBrain case, pendency disputes exist," and that when a pendency dispute exists, "DOE requires an order from the IHO fully determining the scope of its pendency obligations before it can begin funding a pendency program." Spinner Decl. Ex. 3 at 2–3. DOE has therefore announced a categorical policy of withholding contested iBRAIN pendency implementation unless compelled by a new order, even where the student already has an existing pendency source identifying the placement to be maintained.

The IDEA does not permit that policy. Stay-put is automatic. It is triggered by the DPC. It does not depend on DOE agreement, internal review, a new administrative order, implementation-unit processing, or DOE's unilateral view that the scope of pendency should be relitigated before any funding begins. Because Z.C. already has a legal pendency source establishing the placement to be maintained, DOE's task is to maintain, implement, and fund the status quo, not to suspend funding while it forces Parent to relitigate pendency.

As set forth below, all three analytical tracks recognized in Mendez v. Banks, 65 F.4th 56 (2d Cir. 2023), support relief. First, stay-put itself operates as an automatic injunction, entitling Z.C. to a declaration of placement and ordinary-course funding without a separate showing of irreparable harm. Second, Z.C.'s placement is in concrete jeopardy because the Enrollment Agreement requires Parent to obtain a qualifying order by July 1, with DOE funding/payment for

the July 1 installment obligations to be completed no later than thirty-five days after July 1. Third, the traditional TRO/PI standard is satisfied because DOE's refusal to maintain and fund the stay-put placement is a prohibited unilateral change in placement and causes irreparable harm by threatening the continuity of Z.C.'s educational program, related services, transportation, school-health supports reflected in the pendency materials, and access supports.

## STATEMENT OF FACTS

### A. The Student and Her Established Pendency Placement

Z.C. is a student with disabilities whose established pendency placement is iBRAIN. She is classified by DOE as a student with a Traumatic Brain Injury. She has a complex educational profile involving traumatic brain injury, cerebral palsy, developmental delays, dysphagia, motor impairments, AAC dependence, power-wheelchair use, limited ambulation, feeding/swallowing needs, and substantial adaptive-functioning needs.

Z.C. communicates through a total-communication approach, including AAC, gestures, vocalizations, and sign vocabulary. She uses Proloquo2Go on an iPad and requires extended processing time, familiar communication partners, visual, verbal, and tactile cues, AAC programming, direct-selection access, and paraprofessional support to communicate and participate.

Z.C. requires a highly structured, interdisciplinary educational program that integrates special education instruction, speech-language therapy, occupational therapy, physical therapy, assistive technology services, communication supports, hearing services, music therapy, specialized transportation, school-health supports, and extensive management supports throughout the school day.

4

### B. The Pendency-Setting Source

Z.C.'s pendency placement is established by the unappealed Findings of Fact and Decision in IHO Case No. 277285, dated June 27, 2025. Spinner Decl. Ex. 2. That decision is the legal basis as a matter of law for Z.C.'s pendency placement.

The IHO in Case No. 277285 determined that Z.C.'s pendency lay in the unappealed January 24, 2024 FOFD in IHO Case No. 250764. The IHO explained that the award in FOFD No. 250764 provided payment for Z.C.'s nonpublic school, related services, and transportation costs. Because FOFD No. 250764 was the last unappealed FOFD, the IHO found that Z.C. was entitled to pendency and awarded tuition, services, and transportation from the filing of the DPC through the issuance of the FOFD.

That iBRAIN-based program, including tuition/programming, related services, special transportation, transportation/access supports, and school-health supports reflected in the pendency materials, is the status quo DOE must maintain, implement, and fund during the current proceedings.

### C. The 2026–2027 DPC and Pendency Request

Parent submitted a DPC for the 2026–2027 school year challenging DOE's proposed program and seeking pendency enforcement. The DPC is attached to the Spinner Declaration as Exhibit 1. The DPC was assigned OATH-SEHD Case No. 311523.

The DPC expressly invoked Z.C.'s pendency rights under 20 U.S.C. § 1415(j) and New York Education Law § 4404(4). It identified the legal basis for pendency and requested immediate implementation of Z.C.'s pendency placement.

The DPC package identified the relevant pendency materials: Exhibit A is the Parent Ten-Day Notice; Exhibit B is the Pendency Form; Exhibit C is the legal basis for pendency;

5

Exhibit D is the Draft Interim Order on Pendency; Exhibit E is the iBRAIN Enrollment Agreement; and Exhibit F is the Transportation Contract.

For this motion, Parent seeks enforcement of Z.C.'s pendency placement as established by the pendency source and DPC package: iBRAIN 12-month tuition/program, related services and program components within the iBRAIN program, special transportation, transportation/access supports, and school-health supports reflected in the pendency materials necessary to maintain Z.C.'s stay-put placement.

**D. The July 1 Order Requirement and Thirty-Five-Day Funding Period**

The iBRAIN Enrollment Agreement creates the date-certain urgency for this stay-put enforcement motion. Under the Enrollment Agreement, Installment 1 is due by July 1, 2026. To preserve Z.C.'s ability to attend iBRAIN and receive educational programming and related services for the 2026–2027 school year, Parent must either pay Installment 1 by July 1, 2026, or obtain a state or federal order by July 1, 2026 directing DOE to fund Z.C.'s pendency placement at iBRAIN consistent with the Enrollment Agreement, with DOE's funding/payment for the July 1 installment obligations to be completed no later than thirty-five days after July 1, 2026.

The July 1 date is therefore the deadline for obtaining the Court order, not the deadline for DOE to complete payment. The thirty-five-day period after July 1 is the deadline for DOE to complete the funding/payment necessary for the July 1 installment obligations. Parent seeks only relief consistent with that structure.

The transportation agreement also places Z.C.'s receipt of transportation services for the 2026–2027 school year at risk absent timely order-based implementation. Parent therefore seeks a pre-July 1 order enforcing the pendency placement as a whole, including special transportation and the transportation services necessary for Z.C. to access iBRAIN safely and consistently, with

6

DOE funding/payment for the July 1 installment obligations to be completed within the applicable thirty-five-day period.

## E. DOE's Announced Order-Dependent Policy

DOE's own Davis Letter confirms why this Court's intervention is necessary. In that letter, DOE stated that when pendency is disputed, "DOE requires an order from the IHO fully determining the scope of its pendency obligations before it can begin funding a pendency program." Spinner Decl. Ex. 3 at 2. DOE further stated that in iBRAIN cases, it "regularly challenges the costs and the provision of certain services," that "[i]n every iBrain case, DOE contests pendency transportation at Sisters Travel and Transportation," and that "in every iBrain case, pendency disputes exist." Id. at 3.

DOE's position makes this case urgent. DOE has announced that it will not begin funding a contested iBRAIN pendency program until a new order issues. But Z.C. already has a pendency source that establishes her stay-put placement as a matter of law. DOE cannot use its own dispute, its own refusal to agree, or its own internal processing requirements to suspend the automatic stay-put mandate.

## LEGAL STANDARD

The IDEA provides that "during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child." 20 U.S.C. § 1415(j). The implementing regulation provides the same protection: "the child involved in the complaint must remain in his or her current educational placement" during the pendency of due process and judicial proceedings unless the parent and public agency agree otherwise. 34 C.F.R. § 300.518(a). New York law likewise requires that during proceedings, the student remain in the

7

then-current educational placement unless the parties agree otherwise. N.Y. Educ. Law §

4404(4); 8 N.Y.C.R.R. § 200.5(m).

The Supreme Court has described stay-put as Congress's command that educational

agencies maintain the status quo while the dispute is pending. Honig v. Doe, 484 U.S. 305, 323

(1988). The Second Circuit has repeatedly held that the stay-put provision functions as an

automatic injunction. Zvi D. by Shirley D. v. Ambach, 694 F.2d 904, 906 (2d Cir. 1982);

Mackey ex rel. Thomas M. v. Board of Educ. for Arlington Cent. Sch. Dist., 386 F.3d 158, 160–

61 (2d Cir. 2004). A student's stay-put entitlement applies "regardless of whether [the] case is

meritorious or not." Mackey, 386 F.3d at 161.

Because stay-put is automatic, a parent seeking enforcement of the stay-put right need not

satisfy the ordinary equitable preliminary-injunction standard to obtain a declaration of

placement and ordinary-course funding. Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ., 297

F.3d 195, 199–200 (2d Cir. 2002). The reason is straightforward: "access to immediate interim

relief is essential for the vindication of this particular IDEA right." Id. at 200.

When an administrative decision establishes or confirms the student's pendency

placement, that placement must be treated as the stay-put placement for purposes of 20 U.S.C. §

1415(j). Federal and state regulations likewise recognize that when an administrative decision

agrees with the parent that a placement is appropriate, that placement must be treated as an

agreement between the public agency and the parent for stay-put purposes. 34 C.F.R. §

300.518(d); 8 N.Y.C.R.R. § 200.5(m)(2); Bd. of Educ. of Pawling Cent. Sch. Dist. v. Schutz, 290

F.3d 476, 484–85 (2d Cir. 2002). Once that legal source establishes pendency, the public agency

must maintain and fund the placement during the pendency of the dispute.

In Mendez v. Banks, the Second Circuit recognized three paths relevant here. First, the stay-put provision automatically entitles the student to a declaration of placement and ordinary-course funding without a separate showing of irreparable harm. 65 F.4th at 59–60. Second, where "a delay or failure to pay has threatened [the] child's placement," a court may order payment relief necessary to preserve the stay-put placement. Id. at 58. Third, traditional preliminary-injunction relief remains available when the ordinary TRO/PI factors are satisfied. Id. at 62.

## ARGUMENT

### I. THE COURT HAS JURISDICTION, AND NO EXHAUSTION IS REQUIRED.

This Court has jurisdiction under 28 U.S.C. § 1331 and 20 U.S.C. § 1415(i)(2), because this action arises under the IDEA and seeks enforcement of the IDEA's stay-put provision. The Court also has authority to issue declaratory and injunctive relief under 28 U.S.C. §§ 2201–2202, Fed. R. Civ. P. 57, Fed. R. Civ. P. 65, and 20 U.S.C. § 1415(i)(2)(C)(iii).

No exhaustion barrier prevents this Court from enforcing Z.C.'s stay-put rights. Stay-put protects the child during the administrative process. Requiring Parent to complete that process before obtaining stay-put enforcement would defeat the very right being enforced. Murphy, 297 F.3d at 199–200.

The Complaint develops this theory under the sections "No Exhaustion Required" and "No New IHO Pendency Order Required." As explained there, DOE may not condition implementation of an already-established pendency placement on Parent first obtaining a new IHO order. The DPC triggered stay-put. The FOFD in IHO Case No. 277285 identifies the placement to be maintained. The only question before this Court is whether DOE must implement the automatic statutory command.

It must.

## II. iBRAIN IS Z.C.'S ESTABLISHED PENDENCY PLACEMENT.

Z.C.'s pendency placement is the iBRAIN-based program established and confirmed by the unappealed pendency source. The FOFD in IHO Case No. 277285 held that Z.C.'s pendency lay in the prior unappealed FOFD in IHO Case No. 250764, which awarded payment for Z.C.'s nonpublic school, related services, and transportation costs. The IHO therefore awarded tuition, services, and transportation as pendency.

A pendency placement established by administrative decision must be maintained. Federal and state law require DOE to preserve the student's then-current educational placement during the pendency of administrative and judicial proceedings. 20 U.S.C. § 1415(j); 34 C.F.R. § 300.518(a); N.Y. Educ. Law § 4404(4); 8 N.Y.C.R.R. § 200.5(m). Where an administrative decision establishes or confirms the placement that must be maintained, DOE is responsible for funding that placement during the pendency of further proceedings. See Schutz, 290 F.3d at 484–85.

The same principle controls here. Z.C.'s pendency source establishes the iBRAIN-based program as the placement DOE must maintain. Parent's 2026–2027 DPC did not erase that source; it triggered DOE's obligation to maintain, implement, and fund it. DOE therefore must maintain, implement, and fund the iBRAIN-based pendency placement, including the related services, special transportation, transportation/access supports, and school-health supports reflected in the pendency source and DPC package.

DOE cannot reduce pendency to a school name while withholding the services that make the placement accessible. Z.C.'s pendency includes not only tuition/programming at iBRAIN, but also the related services and supported-access components within that program, special transportation, transportation/access supports, and school-health supports reflected in the pendency materials necessary to maintain the placement. For Z.C., those components are not

ancillary. They are the means by which she safely accesses instruction, related services, transportation, school-health supports reflected in the pendency materials, transitions, and the educational environment.

## III. MENDEZ ENTITLES Z.C. TO RELIEF.

### A. Track One: Stay-put is an automatic injunction requiring declaration of placement and ordinary-course funding, with no showing of harm.

Under Track One of Mendez, this Court may declare Z.C.'s pendency placement and order ordinary-course funding without requiring Parent to satisfy the traditional preliminary-injunction standard. That follows from the automatic nature of stay-put.

The IDEA says the child "shall remain" in the then-current educational placement. 20 U.S.C. § 1415(j). The Second Circuit has long treated that language as mandatory and automatic. Zvi D., 694 F.2d at 906; Mackey, 386 F.3d at 160–61. The stay-put right is not a discretionary remedy. It is the statutory protection that preserves the educational status quo while the merits dispute is litigated.

Mendez did not disturb that rule; it confirmed that courts may declare the stay-put placement and require funding in the ordinary course while separately recognizing payment relief where a placement is threatened. That is precisely the baseline relief sought here: a declaration that Z.C.'s pendency placement is the iBRAIN-based program established by the FOFD pendency source, and an order directing DOE to maintain, implement, and fund that placement in accordance with the pendency source and applicable agreements.

### B. Track Two: Z.C.'s placement is in jeopardy, authorizing payment relief necessary to preserve it.

Track Two also supports relief. Mendez recognized that where delay or failure to pay threatens the child's placement, a court may order payment relief necessary to preserve stay-put. 65 F.4th at 58.

11

That is this case, because the threatened loss is tied to the Enrollment Agreement's July 1 order requirement, the transportation agreement's parallel order-based structure, the supported access and school-health obligations in the DPC package, and DOE's announced refusal to fund contested iBRAIN pendency absent a new order. Under the Enrollment Agreement, Parent must either pay Installment 1 by July 1, 2026 or obtain a state or federal order on or before July 1, 2026 directing DOE to fund Z.C.'s pendency placement at iBRAIN consistent with the Enrollment Agreement, with DOE's funding/payment for the July 1 installment obligations to be completed no later than thirty-five days after July 1, 2026. Without that order, Z.C.'s ability to attend iBRAIN and receive the educational programming, related services, special transportation, access supports, and school-health supports reflected in the pendency materials necessary to maintain her stay-put placement for the 2026–2027 school year is jeopardized.

This is not an abstract disagreement over reimbursement timing. As set forth in the Complaint under the sections "Abrams / Mendez Continuity," "Known DOE Evasion Arguments Fail," and "Irreparable Harm," the controversy is concrete: the governing agreement requires a qualifying order by July 1, and DOE's announced policy is to withhold implementation unless compelled by an order. The placement depends on timely judicial enforcement of the pendency right.

The requested order is measured and tracks the operative agreements' timing structure without requiring DOE to complete funding/payment by July 1. Parent seeks an order before July 1 declaring and enforcing Z.C.'s pendency placement and directing DOE to maintain, implement, and fund that placement. Parent also seeks direction that DOE complete the funding/payment necessary for the July 1 installment obligations no later than thirty-five days after July 1, 2026, and fund ongoing pendency obligations as they become due under the

12

pendency source and applicable agreements. That relief preserves the placement while respecting the ordinary processing time Mendez recognized.

### C. Track Three: The traditional TRO/PI standard is satisfied.

Even if the traditional TRO/PI standard applied, Parent satisfies it. Parent is likely to succeed because Z.C.'s pendency placement is established by the FOFD pendency source, the 2026–2027 DPC triggered DOE's obligation to maintain that placement, and DOE has not implemented it. The legal question is straightforward: whether DOE must maintain the placement already established as Z.C.'s pendency. Under the IDEA, the answer is yes.

Parent also establishes irreparable harm. A violation of stay-put threatens the continuity of a disabled student's educational placement, and courts routinely treat the interruption of a child's mandated educational placement and services as irreparable harm. The harm here is especially concrete because Z.C.'s enrollment, educational programming, related services, special transportation, access supports, and school-health supports reflected in the pendency materials depend on timely enforcement of pendency. DOE's failure to act threatens the very continuity stay-put exists to protect.

The balance of equities and public interest also favor relief. Congress already made the relevant policy choice in § 1415(j): during the dispute, the child remains in the then-current educational placement. The public interest is served by enforcing the IDEA, preserving educational stability, and preventing DOE from shifting the consequences of its noncompliance to Z.C., Parent, and the providers necessary to maintain the placement.

### IV. DOE MAY NOT CONDITION PENDENCY ON A NEW IHO ORDER, MAY NOT GRANT ITSELF A STAY BY INACTION, AND FACES NO LEGAL RISK IN BEING ORDERED TO FUND.

DOE's Davis Letter states its position plainly: when pendency is disputed, DOE requires an IHO order fully determining the scope of its pendency obligations before it begins funding.

13

Spinner Decl. Ex. 3 at 2–3. As applied to a student like Z.C., that position conflicts with the automatic nature of stay-put.

The Complaint develops this point under "No New IHO Pendency Order Required," "DOE May Not Self-Stay," "Any Stay Requires Lawful Stay Relief," and "Documentation / Implementation-Unit Arguments Fail." Those sections explain the controlling principle: once Parent filed the DPC and invoked pendency, DOE's obligation arose by operation of law. DOE's disagreement with scope, transportation, cost, access supports, school-health supports reflected in the pendency materials, documentation, or internal implementation procedures cannot suspend the stay-put mandate.

DOE has a path if it wants relief from pendency: it must seek lawful stay relief from the tribunal with authority to grant it. It cannot obtain the same result through inaction. It cannot refuse to fund the pendency placement, wait for Parent to litigate the very order DOE insists upon, and then characterize the resulting delay as ordinary processing.

Nor does DOE face legal risk from being ordered to fund Z.C.'s pendency placement. Stay-put funding is the statutory consequence of maintaining the placement during the proceedings. When a pendency source establishes the placement, the public agency must fund the placement while the dispute is pending. Schutz, 290 F.3d at 484–85; Mackey, 386 F.3d at 160–61. If DOE believes it has administrative objections to documentation, invoicing, proof of delivery, or mechanics, those objections can be addressed during implementation. They do not permit DOE to withhold the authorizations, approvals, funding commitments, payment directions, and funding/payment necessary to maintain the stay-put placement itself.

## V. COST IS NOT A BASIS TO CONTEST PENDENCY.

DOE's Davis Letter also asserts that DOE regularly challenges iBRAIN costs, transportation, and associated services. Those objections do not defeat pendency.

14

The stay-put inquiry asks what educational placement must be maintained during the dispute, not whether DOE prefers a less expensive or administratively easier alternative. The Second Circuit has held that stay-put requires the district to maintain the child's placement during proceedings, even when the district disputes the merits. Mackey, 386 F.3d at 161. The funding obligation follows the placement. Once a placement becomes the stay-put placement, the district may not cut off public funds because it objects to cost. Zvi D., 694 F.2d at 906.

That rule matters here. Z.C.'s pendency placement includes iBRAIN programming, related services and supports, special transportation, access supports necessary for safe educational access, and school-health supports reflected in the pendency materials. DOE may not preserve the appearance of compliance by funding only pieces of the placement, withholding the access supports necessary for Z.C. to attend safely, or forcing Parent and providers to carry the placement while DOE relitigates cost.

The relief requested does not require DOE to pay the entire year immediately or complete funding/payment by July 1. It requires DOE to maintain, implement, and fund the pendency placement in accordance with the pendency source and applicable agreements and to complete funding/payment for the July 1 installment obligations no later than thirty-five days after July 1, 2026. That is stay-put enforcement, not a merits award or an acceleration of full-year tuition, transportation, access-support, or school-health-support payments.

## VI. THE RELIEF REQUESTED

Parent respectfully requests an order that does the following:

First, declare that Z.C.'s pendency placement for the 2026–2027 proceedings arising from OATH-SEHD Case No. 311523 is the iBRAIN-based program established by the unappealed FOFD pendency source, including tuition/programming, related services, and transportation.

15

Second, direct Defendants New York City Department of Education and Chancellor Kamar H. Samuels to maintain, implement, and fund Z.C.'s pendency placement during the pendency of the administrative and judicial proceedings, including iBRAIN 12-month tuition/program, related services and program components within the iBRAIN program, special transportation, transportation/access supports, and school-health supports reflected in the pendency materials necessary to maintain the placement, consistent with the pendency source and DPC package.

Third, issue the order before July 1, 2026, so Parent satisfies the Enrollment Agreement's order requirement and Z.C.'s ability to attend iBRAIN and receive educational programming, related services, special transportation, access supports, and school-health supports reflected in the pendency materials for the 2026–2027 school year is preserved.

Fourth, direct DOE to complete the authorizations, approvals, funding commitments, payment directions, and funding/payment necessary for the July 1 installment obligations no later than thirty-five days after July 1, 2026, and to fund ongoing pendency obligations as they become due under the applicable agreements and pendency source.

Fifth, direct DOE to continue maintaining, implementing, and funding Z.C.'s pendency placement until the administrative proceedings and any appeals are final or until the parties otherwise agree in writing.

This relief is narrow. It enforces the stay-put placement already established by Z.C.'s pendency source and preserves that placement while the merits of Parent's 2026–2027 FAPE claims are litigated administratively. It does not decide the merits of Parent's FAPE claims, does not decide the ultimate appropriateness of DOE's proposed 2026–2027 IEP, does not accelerate a

16

full-year merits award, and does not require full-year payment by July 1. It simply requires DOE

to comply with the automatic statutory obligation that arose when Parent filed the DPC.

## CONCLUSION

The IDEA's stay-put command is designed to be simple, automatic, and protective. It

prevents school districts from changing a disabled child's educational placement while the adults

litigate. Z.C. has a legal pendency source establishing the iBRAIN-based program as her stay-put

placement, including the services, transportation, access supports, and school-health supports

reflected in the pendency materials necessary to access and maintain that placement. Parent filed

the 2026–2027 DPC and invoked pendency. DOE has not implemented. DOE has also

announced a categorical policy of requiring a new order before funding contested iBRAIN

pendency, even where the student already has an existing pendency source that identifies the

placement to be maintained.

The Court should not permit DOE's inaction to function as a stay of Z.C.'s statutory

rights. Parent respectfully requests that the Court grant the motion and issue an order before July

1, 2026 declaring and enforcing Z.C.'s pendency placement and directing DOE to maintain,

implement, and fund that placement in accordance with the pendency source and applicable

agreements, including completion of funding/payment for the July 1 installment obligations no

later than thirty-five days after July 1, 2026, and ongoing pendency funding as obligations

become due under the pendency source and applicable agreements.

17

Dated: New York, New York
June 26, 2026

Respectfully submitted,

/s/ Jeffrey A. Spinner
Jeffrey A. Spinner, Esq.
Liberty & Freedom Legal Group, Ltd.
Attorneys for Plaintiff
105 East 34th Street, Suite 190
New York, New York 10016
Telephone: (646) 850-5035
Email: jeff@pabilaw.org